Our fifth piece this morning is Taha v. International Brotherhood of Teamsters. Mr. Keller. Good morning, Your Honors. The facts of this case can be summed up succinctly. The fix was in, and the complaint paints a clear picture of the union's arbitrary conduct and bad faith. Not only does the union provide no defense or investigation for Taha, it actively suppresses his grievance. Lurking in the background is a possible motive for this conduct. Free airline tickets. On Rule 12b-6, Taha is given lenience. Specific facts are unnecessary at this stage. While Taha need not be comprehensive about what happened, he is. He details the family emergency prompting the leave, his efforts to extend the leave, and his communications with specific union and company reps. The only lull in the complaint is the what and why of the union's actions. Information Taha does not know, cannot know. This is a simple, single count. There were no plausible allegations that the grievance was meritorious. Your Honor? There's no allegations that he was given reason by the company to believe that his leave request had been granted. Well, Your Honor, those facts, frankly, were not within the grievance hearing. They were never argued. Well, one of the predicates for your claim against the union is that the grievance was at least plausibly meritorious, and there aren't any allegations to that effect here. Not specifically. Well, that's a predicate for your claim. True, but looking at the complaint and the allegation that it was potentially compromised by a conflict of interest, the whole process, we allege, or at least argue here, the whole process was compromised. And in that regard, if there was a conflict of interest, this hearing could have obviously gone the other way, and we would argue that it does. Not if you have no basis for arguing that the grievance was meritorious. Well, Your Honor, we frankly don't know. And usually I try not to answer Your Honor's questions with that answer, but here we don't know because. . . You have to plead a plausible basis for the grievance, and I didn't see that here. Well, I would also point. . . That he was wrongly discharged when he failed to return after a lengthy absence. Well, again, I would point to the fact that there's an allegation that the process was compromised due to the conflict of interest, the free airline tickets. Understood, but what about the underlying grievance? Because that's what this is all about. Certainly. There's emails which were important, which we allege were important and beneficial to Mr. Taha's cause, and these emails were suppressed deliberately by the union rep. And those emails obviously were not part of the complaint, but there's inferences there that we can take, viewing it in Mr. Taha's favor, that those emails would have carried the day. Mr. Kelher, I guess I'm having some trouble with that. You've referred several times to, quote, strong and important emails, but we don't have any idea what those say. That's true, Your Honor. Why not? I don't know, Your Honor, and I think, is this complaint a model complaint? I'd certainly admit it's not. It would definitely be helpful to me, helpful to Your Honors, if those emails were included. But I would also point to some of the arguments we made in the reply brief, citing the Gineski case and the Highsmith case, in which on an appeal we can elaborate on allegations from the complaint. I generally agree with that, but you didn't. Well, I would also point to the fact that there was no defense presented whatsoever. Literally, Mr. Stripling didn't say a word. So I think those two facts, and again, recognizing that this is a de novo standard and reviewing the allegations in Mr. Taha's favor, I think there's got to be some leeway from Mr. Taha and consider those inferences in his favor. Again, the complaint does say that the emails are beneficial. Would it have been helpful to say what they were? Certainly. I would acknowledge that. But again, given the standard and given what we're reviewing, I would ask that the court consider those emails. Well, what is the basis for the claim that he was wrongly terminated? Well, that essentially he had reached out to the union and the company reps. No question he asked for a leave, extended leave. Certainly. Is there a good faith allegation as you stand here today that he was given reason to believe that that request had been granted? I wouldn't say granted, but I would say he was led to believe that essentially everything would be fine and that he would be permitted to come back after this additional time. Again, I would not say I have any hard evidence. I wish there was as we stand here today. But, again, not to beat a dead horse, but viewing the allegations in his favor, I think we can infer that there were communications and Mr. Taha was reasonably led to believe his leave would be extended. On the statute of limitations issue, the standard is reasonable, not actual notice. How is he not outside the six months? Because that second letter, that second letter, or I should say the second email, which includes the concludes language, that word concludes, that language was absent in that first letter. And the finality of the second, which was absent in the first, should mean that the second letter controls. Again, Taha had not gone through this process before. The union obviously had. And Taha believed that there was a second step. And as allies, not adversaries, the union owed Taha an explanation of what that next step was. And, therefore, that second letter, which was on August 21st, that would be where the clock starts. The fact that they were not forthcoming with information as to when or what it was going to do next, essentially they delayed, they stalled, and they should not now be able to capitalize on that delay. So, therefore, we assert the second letter is when the clock starts. Your Honors, ultimately here we have a situation where Mr. Taha was in the dark as to what was happening. These allegations that Mr. Slipling told the union members stay quiet, suppressing important evidence, and presenting no defense whatsoever deserves not deference, but disdain. And if there are no further questions, I'll reserve. Thank you. Thank you. Ms. Hamilton. Good morning. May it please the Court, my name is Deirdre Hamilton. I represent the International Brotherhood of Teamsters. First, this case is untimely. The contract, in effect at the time, clearly said that all decisions of the Grievance Hearing Board were final and binding, and arbitration only happened if the board deadlocked. And on March 1, 2017, Taha was told that the board had denied his grievance. At that point in time, the union had no discretion to appeal the arbitration. There was no decision to be made, no decision for Mr. Taha to learn about or to appeal. He could have brought his lawsuit on that day. Under Metz v. Tootsie Roll and Christianson, the standard is reasonable notice, not actual notice. And had Mr. Taha been reasonably diligent, he would have understood that the process was complete. For that reason, this claim is untimely. And there's no question that he was sent a copy of that grievance decision? Mm-hmm. He was sent a copy of the grievance decision? He was sent a, as cited in the course of the suit, saying, your grievance has been denied. Right, in March. Yes, March 1. Okay. Moving on to his allegations about the DFR, at this point he's focusing on what happened at the grievance hearing. I'd like to start by noticing that he's now claiming that no defense was offered at all and there was no investigation, and Mr. Stripling said nothing at the hearing, and that's simply not alleged in this complaint at all. There's no allegations to that effect. The only allegations about what happened at the hearing are in one paragraph, number 27, which simply note that Mr. Taha was told to remain silent and he was prevented from presenting these documents evidencing communication. And I understand some elaboration at this level, but the claim that there was no defense offered at all and no investigation, that's a completely new factual allegation that's not consistent with the complaint at all. The allegations he has offered. Not consistent with the? Consistent. With the complaint or? Well, I think, if anything, an unprepared. Or as to it. Sir, yes? I had thought the law allows some supplementation as long as it is consistent with the complaint, not that I don't see the inconsistency here. I think a person who's unprepared might be more likely to leave it to the grievant to present their own case, not less. Can you direct us to cases affirming dismissals of duty of fair representation cases on the pleadings on the merits? I cited a number in my brief. The ones that are coming to mind right now are Yeftich and the Bishop case. Bishop reversed a dismissal. Yes. Because this couldn't be resolved on the pleadings. I think I'm thinking of the Yeftich case. I did cite. I think I mentioned some in my separate opinion in Bishop. But Bishop was a majority reversal on pleading grounds. The district court cited Holloway and Shambon Sons as a case out of the Northern District of Indiana. That cited this circuit's approach to 12B6 analysis for DFR claims when the allegation is bad faith. I believe that was a case where it was talked about some cases that dismissed under 12B6 on the pleadings. So going back to Mr. Taha's allegations about the documents and the fact he didn't speak, he's now claiming he needs discovery. And I understand he doesn't know the union's motivations, but he does know what was in these documents he wanted to present. He knows what he wanted to say at the hearing. He knows what information was not presented at the hearing, and he could easily allege that in his complaint. It's unclear why he did not. So with his allegation that the union's conduct was arbitrary, there's a wide range of deference. There's broad deference given to unions in these decisions. Advocates make these kind of decisions all the time about what evidence to present, who to have testify. Mr. Taha is going to have to show that the decision was so far outside a wide range of reasonableness as to be irrational. And while it's possible presenting some documents is irrational, so far he hasn't shown that it's plausible it was irrational. And this is information that was in his possession at the time his complaint was filed, and he could have explained what was so pertinent in these documents, what wasn't presented to the grievance hearing. He just hasn't done that. Likewise, with his complaint that his conduct was in bad faith, I understand what's being suggested here with this conversation. He believes he overheard about the airline tickets, and that's all we have. And then we need a series of inferences that this was improper. We need to infer it was related to his case. We have to infer it somehow affected the union's representation. In his reply, Mr. Taha says that the decision was so odd he needs discovery to mine the union's motives. And yet he has an alleged fact that it is odd to not present every document the grievant wants to present. Had he described the documents in more detail, described what information was kept from the board, that might present a pleading, alleging facts that this was an odd decision that requires discovery to understand the motives of the union. Finally, as this court has alluded to, he's not shown, he's not alleged facts indicating there would be a different outcome had the union presented the documents or had him testify. And, again, this goes to information. He could easily have explained what was in the documents that was so important at the grievance hearings here and see what information did this grievance board need to see that would have resulted in a different outcome. He has not alleged any facts supporting that allegation. Is it correct, Ms. Hamilton, that grievances through the collective bargaining agreement may often result in, in essence, a less severe penalty for conduct that might well justify termination, but in essence there's an argument for mercy or understanding or a second chance or a last chance? So even if termination could be justified? That happens a lot, doesn't it? That does happen, yes. A lot, right? It happens. I can't speak to how often it happens before this particular grievance board, but it does certainly happen. So this court has no further questions. In summary, Mr. Taha's allegations were in support, factual allegations have been insufficient to support his allegations that the union's conduct was arbitrary or in bad faith, and the decision of the district court should be affirmed. Thank you. Thank you. Mr. Kelleher. Your Honors, individual union members' claims are rare in this court. Those dismissed for failure to state a claim are virtually nonexistent. I couldn't find a similar case in this court, and the union cites none for good reason. Fair representation claims turn on what the union was doing, what it was thinking, why it did what it did. These are questions unanswerable on a 12b-6. In the end, we're swimming in unknowns. There has been no discovery, and only the union can explain whether there was some sort of strategy behind its conduct. Punishing Taha for not knowing what the union was doing, for not knowing he was being led astray, turns the notion of notice pleading on its head. Moreover, this is a good complaint. It gave the union notice of his claim. In reviewing these allegations in favor of Taha, the court should give him an opportunity to develop his case. Mr. Taha had 28 years with United Airlines, and the union treated him with all the concern of an elephant for a flea. And if there are no further questions, we would ask the court to reverse. Thank you. Thanks to all counsel. The case is taken under advisement.